IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ELIZABETH BRUNSTAD, individually and
as personal representative of the Estate of
John Brunstad, ESTATE OF
JOHN BRUNSTAD, RACHEL BRUNSTAD,              OPINION & ORDER
N.B., R.B., A.B., and P.B., by and through their
Guardian ad Litem Catherine Baier,            14-v-255-jdp

                       Plaintiffs,

   v.

MEDTRONIC, INC., MEDRONIC MINIMED,
and UNOMEDICAL A/S,

                       Defendants.

---

Plaintiffs, John Brunstad's family and estate, contend that he died suddenly as a result of the failure of his Medtronic insulin pump, which so over-delivered insulin that it caused a fatal drop in Brunstad's blood sugar. Defendants Medtronic, Inc., and its subsidiary Medtronic MiniMed, Inc., have moved to disqualify plaintiffs' expert, James D. Causey.[1] Dkt. 57. Causey was formerly vice president of research and development at MiniMed, where he worked on the product line at issue in this suit.

The court will grant the motion to disqualify Causey. MiniMed had a confidential relationship with Causey, who worked under the terms of a written confidentiality agreement, and during the course of his work, Causey undoubtedly acquired a great deal of confidential information relevant to the current litigation. Even if much of the technical information that Causey learned would be available to plaintiffs through discovery, it would nevertheless be unfair to Medtronic to allow plaintiffs to use a highly placed former Medtronic employee as

---

[1] The court will refer to these two defendants jointly as "Medtronic," except where it is useful to separately identify the subsidiary, which the court will refer to as "MiniMed."

their technical expert. The court will allow plaintiffs additional time to find a replacement expert, and the magistrate judge will conduct a telephonic conference to amend the scheduling order.

FACTUAL BACKGROUND

An insulin pump is a medical device for the management of diabetes. A modern pump contains a reservoir of insulin and administers programmed doses of insulin through a separate device called an "infusion set." The infusion set consists essentially of a thin tube that enters the patient's body and a connector called a "pcap," which links to the pump. The devices at issue in this case are the MiniMed Paradigm Model No. MMT-523 Pump and the Paradigm Silhouette Infusion Set. Medtronic and its subsidiary MiniMed designed the pump and the pcap of the infusion set, and they manufactured the pump. (Apparently, the infusion set itself was manufactured by the third defendant, Unomedical A/S, although that fact is not pertinent to this motion.)

On the current schedule, the deadline for plaintiffs' expert reports on liability is May 29, 2015. Plaintiffs disclosed to Medtronic that they would use James Causey as their expert witness in this case on March 8, 2015.[2] Medtronic moved to disqualify Causey ten days later, on March 18, 2015. Dkt. 57.

Causey worked for MiniMed as vice president of research and development from 1997 to 2001. Causey and MiniMed entered into an Employee Invention, Trade Secret and Confidential Information Agreement. Dkt. 61. The confidentiality agreement states, in part:

---

[2] Actually, the record a bit vague about when Causey was first disclosed. Defendants contend that Causey was disclosed in a March 8, 2015 email. But the full email chain suggests that Causey might have been known before. Dkt. 60-3, at 1-2 (counsel for defendants emailing that "last week your side represented that Mr. Causey was unavailable to even confer with you in advance of the depositions scheduled for next week"). The point is inconsequential: plaintiffs do not contend that Causey was disclosed as an expert to be used in this case before March 8.

> During the course of Employee's employment, it is expected that Employee may develop, and/or receive from co-workers, "intellectual property," inventions, trade secrets and confidential information relating to MiniMed's business and to its actual and anticipated research or development, as well as other "confidential business information." . . . Employee will, during the term of his/her employment and thereafter, keep confidential and refrain from using (other than in connection with MiniMed's business) or disclosing to others all confidential information and trade secrets of MiniMed which Employee develops or learns about during the course of his/her employment. Employee agrees during and after his/her employment to assist MiniMed in all reasonable efforts to maintain trade secrets. . . . [Intellectual property] includes, but is not limited to, the following with respect to MiniMed: research and development information, laboratory engineering and/or design books, operating methods and procedures, new concepts, electronic and physical data, computer programs and similar items or research projects.

*Id.* at 2-3. Causey was involved in the development of the insulin pump line at issue in this case. (See the evidence cited in Dkt. 58, at 4-5.) He developed and introduced four pump models, one of which was the 511 model—called the "Paradigm project." Dkt. 60-1, at 3. The 511 model "is a direct predecessor model, and has many substantial similarities in operation and technology, to the Model 523 Insulin Pump [at issue in this case]." Dkt. 59, at 4. In addition, the pcap at issue is the same pcap that was developed as part of the Paradigm project. Thus, during his employment at MiniMed, Causey received confidential information about the product line at issue in this litigation, including information about product development and quality assurance.

In a proposed reply, Medtronic contends that Causey has also previously served as an expert for *Medtronic* in insulin-pump litigation. Dkt. 72-2. This would be yet another factor strongly militating in favor of Causey's disqualification. However, because Medtronic could have included this information in its opening brief, the court will not consider it. Thus, plaintiffs' opposition to Medtronic's motion for leave to reply, Dkt. 74, is sustained in this respect. The

court will consider Medtronic's reply concerning plaintiffs' estoppel argument, as Medtronic could not have anticipated this argument in its opening brief.

ANALYSIS

**A. Disqualification**

There is abundant persuasive authority, mostly from federal district courts, that sets out a generally accepted framework for analyzing motions to disqualify experts. Courts generally hold that they have inherent power to disqualify expert witnesses to protect the integrity of the adversarial process and to promote public confidence in the legal system.[3] *See, e.g., Lifewatch Serv. Inc. v. Braemer Inc.*, No. 09-cv-6001, 2010 WL 3909483, at *1 (N.D. Ill. Sept. 28, 2010). To determine whether disqualification is warranted, courts undertake a two-step inquiry: (1) whether the party claiming a conflict had a confidential relationship with the expert; and (2) whether that party disclosed confidential information to the expert that is relevant to the current litigation. *See, e.g., Ross v. Am. Red Cross*, 567 F. App'x 296, 304 (6th Cir.), *cert. denied*, 135 S. Ct. 143 (2014); *Pellerin v. Honeywell Int'l Inc.*, No. 11-cv-1278, 2012 WL 112539, at *2 (S.D. Cal. Jan. 12, 2012). Some courts also undertake a third step, in which they consider whether disqualification would advance the interests of justice. *Ross*, 567 F. App'x at 304. The party seeking disqualification bears the burden of proving these elements. *Id.* Disqualification motions should not be granted lightly, because such motions carry great potential for abuse. *Sarl v. Sprint Nextel Corp.*, No. 09-2269, 2013 WL 501783, at *4 (D. Kan. Feb. 8, 2013).

---

[3] Plaintiffs cite *In re Mentor Corp. Obtape Transobturator Sling Products Liability Litigation*, No. 4:08-md-2004, 2010 WL 1416548 (M.D. Ga. Apr. 1, 2010), in which the court declined to exercise its inherent authority, and offered some criticism of this line of cases. But plaintiffs do not expressly urge this court to follow the rationale in *Mentor Corp.*, and they seem to embrace the consensus approach based on the court's inherent authority. Moreover, *Mentor Corp.* would not be much help to plaintiffs, because under the rationale of that case, Causey's confidentiality agreement would likely require his disqualification.

1.  **Confidential relationship**

There is no serious question that MiniMed had a confidential relationship with Causey. The parties agree that Causey signed a confidentiality agreement. Dkt. 61. Many courts have held that the existence of a confidentiality agreement substantiates a reasonable expectation of a confidential relationship. *See, e.g., Sarl*, 2013 WL 501783, at *5; *Pellerin*, 2012 WL 112539, at *2; *Lifewatch*, 2010 WL 3909483, at *2. In light of the confidentiality agreement and the nature of Causey's work at MiniMed, the court concludes that MiniMed had a confidential relationship with Causey.

2.  **Receipt of relevant confidential information**

There is also no serious question that Causey received confidential information concerning Medtronic insulin pumps during the course of his employment. And, to be clear, it is sufficient that Causey received confidential information; it is not necessary for Medtronic to show that he violated his confidentiality agreement. *Lifewatch*, 2010 WL 3909483, at *1. Plaintiffs do not dispute that Causey received confidential information.

Rather, plaintiffs argue that Causey did not receive *privileged* information, and so he did not receive any information about Medtronic's litigation strategy. According to plaintiffs, the information that Causey received was merely technical information that would be available to plaintiffs through discovery anyway. Plaintiffs contend that disqualification is warranted only when the expert has received the other side's privileged information. This court will not apply the rule proposed by plaintiffs when the targeted expert is a former employee.

Expert disqualification cases come in two prototypical categories: the so-called side-switching cases and the former-employee cases. In a side-switching case, a retained non-employee expert who worked for one side crosses over and goes to work for the other. For example, in *Nikkal Industries, Ltd. v. Salton, Inc.*, 689 F. Supp. 187 (S.D.N.Y. 1988), the

5

plaintiff's counsel consulted with an expert, Sorenson, for potential engagement, and in the process provided technical information to Sorenson. The plaintiff ultimately hired another expert. But then Sorenson signed on as the defendant's expert, and the plaintiff sought to disqualify him. The court held that disqualification was not warranted because Sorenson received only technical non-privileged information. In a side-switching case, it makes sense to distinguish between factual information and privileged information. *See also Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087 (N.D. Cal. 2004). When the expert is a non-employee without extensive inside knowledge of the opposing party, disqualification is warranted only if the expert has privileged information that will not be available through discovery. The two cases most relied on by plaintiffs, *Koch Refining Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178 (5th Cir. 1996), and *Sarl*, 2013 WL 501783, present more complicated examples, but they are essentially variations of this same principle applied to non-employee experts.

Disqualification is more readily granted when the targeted expert is a former employee of the opposing party. Expert disqualification is generally not decided by bright-line rules, but this principle comes close to a rule: "[i]n cases where an expert was a former employee and learned of technical information that relates to the lawsuit, most courts have disqualified the expert." *Thompson, I.G., L.L.C. v. Edgetech I.G., Inc.*, No. 11-12839, 2012 WL 3870563, at *5-6 (E.D. Mich. Sept. 6, 2012); *see also Pellerin*, 2012 WL 112539; *Lifewatch*, 2010 WL 3909483. Plaintiffs have not pointed to any case in which a former employee who was subject to a confidentiality agreement was not disqualified from serving as an expert against his former employer. Perhaps disqualification would not be warranted for a low-level employee, or if the information were only marginally relevant. But this is not such a case: Causey was vice president of research and development for one of the defendants, and he played an important role in the design and quality control of the product line at issue in this suit.

6

3. **Policy considerations**

In determining whether disqualification is warranted, courts have considered policy objectives, including preserving the integrity of the judicial process, ensuring access to expert witnesses with specialized knowledge, the expert's interest in pursuing his professional calling, and the availability of alternatives to the disqualified expert. *Koch*, 85 F.3d at 1182-83.

The parties offer little on these topics. Plaintiffs contend that there are very few experts knowledgeable about insulin pump technology, and that it would be difficult for plaintiffs to find one in the time available. Plaintiffs have provided no support whatsoever for the proposition that there are few experts on insulin pumps. That proposition is dubious given the prevalence of diabetes in the United States and the widespread use of insulin pumps. *See* Consensus Statement by the American Association of Clinical Endocrinologists/American College of Endocrinology Insulin Pump Management Task Force.[4] Any undue burden on plaintiffs will be ameliorated by a new schedule, which will provide plaintiffs with a reasonable amount of time to engage a new expert.

This is a case in which disqualification preserves the integrity of the judicial process. As a result of his work for MiniMed, Causey may well have technical information about Medtronic products, which he could be compelled to provide as a fact witness. His testimony in that capacity would be open to scrutiny by both sides, and Medtronic could guard against the disclosure of protected information. But it would be unfair to Medtronic to allow him to serve as an expert for plaintiffs, which would afford Medtronic no opportunity to protect its privileged or confidential information. Even if Causey diligently tried to respect his obligations under his

---

[4] Available at https://www.aace.com/files/insulin-pump-management-cs.pdf (last visited April 29, 2015).

confidentiality agreement, he could implicitly or unconsciously guide plaintiffs' litigation strategy on the basis of knowledge that he is contractually barred from disclosing.

**B. Estoppel**

Plaintiffs also contend that Medtronic is estopped from objecting to their engagement of Causey because Medtronic has known that Causey had been consulting with "plaintiffs' attorneys" since 2012. Plaintiffs' argument fails for two reasons. First, the argument is not adequately developed in two scant paragraphs. Plaintiffs contend that Medtronic has somehow induced plaintiffs' reliance by Medtronic's failure to object to Causey's minor participation in an earlier case, but they do not explain how this meets the elements of estoppel. Any argument that is insufficiently developed is deemed waived. *See United States v. Turcotte*, 405 F.3d 515, 536 (7th Cir. 2005).

The second problem with plaintiffs' estoppel argument is that plaintiffs do not show that Medtronic was aware that *plaintiffs* were using Causey as an expert before March 8, 2015. What plaintiffs show is that attorney Charles R. Houssiere, III, has used Causey as a consultant since 2012. Medtronic was aware in 2012 that Causey was consulting for Houssiere's clients at the time (which did not include plaintiffs in this case), but that Medtronic made no effort to stop Houssiere from using Causey. Dkt. 69. Houssiere's declaration is decidedly vague about the nature of the consulting provided by Causey. Houssiere does not state that he was using Causey as a liability expert, as plaintiffs are in this case. In reply, Medtronic explains that Causey's participation was limited to observation of device testing, and that had those cases with Houssiere not settled early, Medtronic would have objected to Causey's use as a liability expert. Dkt. 71-2, at 9-10.

But there is another problem for plaintiffs: they have not shown that Houssiere had anything to do with this case before the dispute over Causey arose. Houssiere first appeared in

this case on March 18, 2015, the same day that defendants filed their motion to disqualify Causey. Dkt. 54 and Dkt. 57. Thus, even if Medtronic acquiesced to Causey working on Houssiere's other cases back in 2012, that fact does not show that Medtronic induced plaintiffs in this case, or the attorneys actually working on plaintiffs' case, to do anything.

ORDER

IT IS ORDERED that:

1. The motion by Medtronic and MiniMed, Dkt. 57, is GRANTED. Plaintiffs' motion for hearing on the motion to disqualify Causey, Dkt. 70, is DENIED.

2. Plaintiffs' motion to amend the scheduling order, Dkt. 55, is GRANTED, so that plaintiffs may have a reasonable time to engage a replacement expert. The motion for a hearing on this motion, Dkt. 73, is GRANTED, solely to allow for a telephonic hearing to set a new calendar.

3. Defendants' motion for leave to file a reply, Dkt. 71, is GRANTED in part, and DENIED in part. Defendants are instructed to file their submission, Dkt. 71-2, as a separate entry on the docket.

Entered April 30, 2015.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge